1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF WASHINGTON

8                                    )
9   JON KINNE,                       )   NO.   CV-09-0115-LRS
                                     )
10                      Plaintiff,   )
                                     )   ORDER GRANTING DEFENDANTS'
11       -vs-                        )   MOTION FOR SUMMARY JUDGMENT
                                     )
12                                   )
    OTHELLO COMMUNITY HOSPITAL,      )
13  ADAMS COUNTY PUBLIC HOSPITAL     )
    DISTRICT NO. 3, and HARRY        )
14  GELLER, in his individual        )
    capacity,                        )
15                                   )
                        Defendants.  )
16                                   )

17
       BEFORE THE COURT is Defendants' Motion for Summary Judgment (Ct. Rec.
18
    22).   This action arises out of the employment and termination of
19
    Plaintiff Kinne who was the Chief Financial Officer for approximately six
20
    months at Defendant Othello Community Hospital. Kinne alleges claims
21
    under 42 U.S.C. §1983 asserting he has been deprived of his right to
22
    privacy and freedom of association; wrongful discharge in violation of
23
    public policy; retaliatory discharge in violation of RCW 49.60.210; and
24
    breach of promise of specific treatment in specific circumstances.  The
25

26

ORDER - 1

1  Court heard oral argument on January 21, 2010 and  took the motion under

2  advisement.

3  **I.  FACTS**

4     The following facts are undisputed, unless indicated otherwise.

5     Plaintiff Kinne was hired by Defendant Hospital as its Chief Financial

6  Officer on October 30, 2006, and was an at-will employee.  As the CFO,

7  Kinne's main responsibilities included the overall finances of the

8  Hospital, overseeing incoming cash, overseeing the business office, and

9  analyzing contractual discounts. Kinne supervised 6 people who worked in

10 the Hospital's Business Office, including the Business Office Manager,

11 Diana Villarreal, who reported directly to Kinne.  At the start of his

12 employment, Kinne received a copy of the Hospital's Employee Handbook.

13    The Employee Handbook, in its Introduction Policy, disclaims all

14 contractual intent with respect to its policies.  The first page of the

15 handbook states, in pertinent part:

16         This handbook contains general statements of Adams
           County Public Hospital District No.3, operating as
17         Othello Community Hospital ("OCH"), policy for your
           information ... as we are sure you understand, we must
18         be able to respond flexibly to changing circumstances
           as they arise. **Because of this, our policies are simply**
19         **guidelines**, **not promises of specific treatment in**
           **specific situations**. [Emphasis original.] Our policies
20         and practices, including the compensation and benefits
           we provide, are subject to change in content and
21         application without prior notice, at our discretion.
           All   decisions   regarding   the   application   or
22         interpretation of our policies and practices are also
           in our discretion.  This applies to all of our policies
23         and practices, whether formal or informal, and whether
           or not contained in this handbook. Nothing in this
24         handbook is intended to be a contract limiting OCH's
           discretion to act as it deems appropriate in any given
25         situation.

26 Ct. Rec. 23, ¶6.

ORDER - 2

1   The Hospital's Employee Handbook also contained a policy titled:

2   "Harassment, Including Sexual Harassment," which prohibited all forms of

3   harassment. A part of that policy states, as follows:

4           Because of the potential for miscommunication,
        misunderstandings and conflicts of interest, a

5        supervisor who is considering dating someone he or she
        directly or indirectly supervises must first notify the

6        Director of Human Resources. OCH reserves the right to
        take steps in those situations intended to ensure that

7        the relationship is voluntary, that favoritism is
        avoided and that OCH's interests are otherwise

8        protected. This policy applies to all employees who
        have the authority or the practical power to supervise,

9        appoint, remove, or discipline another employee or who
        are responsible for auditing the work of another

10       employee.

11  Ct. Rec. 23, ¶9.

12      Plaintiff stated at his deposition that he believed it to be important

13  that the Hospital have such a policy because it is necessary for the

14  protection of both the employees and employers. Kinne agreed that such

15  a policy is necessary and important in order to avoid sexual harassment,

16  favoritism in hiring, supervision, and delegation of duties. Kinne also

17  admits that having such a policy is important to avoid misunderstandings,

18  miscommunications, and conflicts of interests. Additionally, Plaintiff

19  does not contend that the Hospital was precluded from withholding consent

20  to the dating relationship while either Plaintiff or Ms. Villarreal were

21  employed in the same office.

22      Harry Geller has been the Chief Executive Officer at Othello

23  Community Hospital since December 2000. Mr. Geller counseled Kinne

24  regarding underperforming in his job responsibilities on several

25  occasions. Additionally, in early March 2007, Mr. Geller met with Kinne

26  to discuss concerns of favoritism raised by staff members of the business

ORDER - 3

1  office. During that meeting, Mr. Kinne was counseled to not interrupt

2  staff excessively; not to unnecessarily interrupt staff for tasks which

3  Kinne should be performing himself; to prioritize his tasks better; to

4  appreciate the core tasks that must be performed by subordinates in the

5  business office, and to respect the deadlines by which those core tasks

6  were to be completed.  Mr. Geller viewed Kinne's behaviors as a pattern

7  of inadequate management.  Ct. Rec. 23, ¶¶12-14.

8      On March 19, 2007, Mr. Geller directed Kinne to re-do the

9  financial statements to more accurately reflect the Hospital's financial

10 condition and to strike flippant comments made by Kinne in a document

11 associated with the financial statements, after the documents had gone

12 out to the Hospital's Board of Commissioners.  On multiple occasions, Mr.

13 Geller spoke with Kinne about improving his contractual discount analysis

14 and the importance of that job responsibility.  Ct. Rec. 23, ¶¶15-17.

15     On April 11, 2007, Mr. Kinne asked Mr. Geller for permission to date

16 Diana Villarreal, the Business Office Manager that reported directly to

17 Kinne. On April 12, 2007, Mr. Geller met with Kinne and advised him that

18 for his protection, Diana Villarreal should also submit a voluntary

19 request to date Kinne. On April 16, 2007, Mr. Geller met with Kinne and

20 provided Kinne with a written Memorandum withholding the Hospital's

21 permission for Kinne to date Diana Villarreal so long as Kinne was an

22 employee of the Hospital. Permission was withheld, in part, because the

23 Hospital had already received complaints of favoritism from employees in

24 the business office. Ct. Rec. 23, ¶¶18-19.  On April 16, 2007, Geller

25 also met with Diana Villarreal and provided her with a written Memorandum

26 withholding the Hospital's permission for her to date Kinne so long as

ORDER - 4

1   she was an employee of the Hospital. Permission was withheld because of

2   departmental operations issues. Kinne never discussed with Geller the

3   topic of marriage between Kinne and Villarreal. Ct. Rec. 23, ¶¶20-21.

4       On April 20, 2007, Geller had another meeting with Kinne to again

5   discuss Kinne's need to improve his contractual discount analysis and

6   the need to correct financial statements.  On April 26, 2007, Kinne

7   informed Mr. Geller and the Hospital's Human Resources Director,

8   Cheryl Olson, that Kinne received a reference call on April 25, 2007

9   from a potential employer concerning Diana Villarreal. On April 27,

10  2007, Diana Villarreal submitted her resignation as the Business

11  Office Manager for the Hospital.  Kinne did not appear, at meetings

12  held on April 27, 2007 and again on April 30, 2007, to be concerned

13  for his department or cooperative regarding finding a replacement for

14  Ms. Villarreal, according to Ms. Olson and Mr. Geller.  Ct. Rec. 23,

15  ¶¶22-27.  In addition to other performance issues, this perceived non-

16  cooperativeness was the final straw which led to Kinne's termination

17  by the Hospital on May 3, 2007. Ct. Rec. 23, ¶28.

18      According to Kinne, he and Diana Villarreal did not start dating

19  until after he was terminated on May 3, 2007, however, they talked

20  about getting married prior to May 3, 2007. Kinne cannot recall the

21  date on which he proposed, but they were married on August 4, 2007.

22  Mr. Kinne admits that his only alleged opposition activity was to

23  follow the Hospital's policy to make sure there was no sexual

24  harassment on the part of himself or Ms. Villarreal.  Based on Kinne's

25  own speculation and perceptions, Kinne believes he was terminated

26

ORDER - 5

1  because he asked permission to date a subordinate, direct report

2  employee, Ms. Villarreal.  Ct. Rec. 23, ¶¶31-34.

3  **II.     ANALYSIS**

4  **A. Burden of Proof on Summary Judgment**

5  The summary judgment procedure is a method for promptly disposing

6  of actions. See Fed. R. Civ. Proc. 56. The judgment sought will be

7  granted if "there is no genuine issue as to any material fact and [ ]

8  the moving party is entitled to judgment as a matter of law." Fed. R.

9  Civ. Proc 56(c). "[A] moving party without the ultimate burden of

10  persuasion at trial [ ] may carry its initial burden of production by

11  either of two methods. The moving party may produce evidence negating

12  an essential element of the nonmoving party's case, or, after suitable

13  discovery, the moving party may show that the nonmoving party does not

14  have enough evidence of an essential element of its claim or defense

15  to carry its ultimate burden of persuasion at trial." *Nissan Fire &*

16  *Marine Ins. Co., Ltd., v. Fritz Companies*, 210 F.3d 1099, 1102 (9th

17  Cir.2000). If the movant meets its burden, the nonmoving party must

18  come forward with specific facts demonstrating a genuine factual issue

19  for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*.,

20  475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

21  If the nonmoving party fails to make a showing sufficient to

22  establish the existence of an element essential to that party's case,

23  and on which that party will bear the burden of proof at trial, "the

24  moving party is entitled to a judgment as a matter of law." *Celotex*

25  *Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265

26  (1986). In opposing summary judgment, the nonmoving party may not rest

ORDER - 6

1 on his pleadings. He "must produce at least some 'significant

2 probative evidence tending to support the complaint.'" *T.W. Elec.*

3 *Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th

4 Cir. 1987) (quoting *First Nat'l Bank v. Cities Serv.* Co., 391 U.S.

5 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

6     The Court does not make credibility determinations with respect to

7 evidence offered, and is required to draw all inferences in the light

8 most favorable to the non-moving party. *See T.W. Elec. Serv., Inc.*,

9 809 F.2d at 630-31 (citing *Matsushita*, 475 U.S. at 587). Summary

10 judgment is therefore not appropriate "where contradictory inferences

11 may reasonably be drawn from undisputed evidentiary facts...."

12 *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335

13 (9th Cir.1980).

14     **B.    Civil Rights Violations Under 42 U.S.C. 1983**

15     **1.   Rights Not Substantially Burdened/Rational Basis for Policy**

16     Plaintiff alleges that the Hospital Administrator, Defendant Harry

17 Geller, deprived him of his right of privacy and right to freedom of

18 association by suffering retaliation for his relationship with

19 Villarreal.  Plaintiff argues, citing an Eleventh Circuit case,[1] that

20 his relationship with Villerreal was protected by the right of

21 intimate association, a type of association protected by the First

22 Amendment's freedom of association.  Further, Plaintiff argues, that

23 making an adverse decision against an employee due to his personal

24 activities and associations may violate his right to privacy.  Ct.

25

26     [1]*Wilson v. Taylor*, 733 F.2d 1539, 1544 (11th Cir.1984).

ORDER - 7

1  Rec. 29, at 17. Finally, Plaintiff asserts that causation is satisfied

2  based on the facts showing that upon Villerreal's notice of

3  resignation, Defendant Geller reflexively terminated Kinne.  *Id*.

4     Defendants argue that while Kinne had a right to freedom of

5  association and privacy, those rights were not violated nor

6  substantially burdened because of the Hospital's policy, for which the

7  Hospital had a rational basis.  The provision of the policy at issue

8  in this case only applies to relationships in which a supervisor

9  desired to date someone he or she directly supervised.  There were

10 only 6 people who reported directly to Kinne.  Thus, the impact was

11 not upon a significant number of individuals.

12    Where fundamental rights are not substantially burdened, the

13 regulation or policy will be upheld where there is a rational basis

14 for its enactment under *Parsons v. County of Del Norte*, 728 F.2d 1234,

15 1237 (9th Cir.1994).  Kinne admits that the Hospital had rational

16 reasons for having such a policy in place.  Specifically, Kinne admits

17 such a policy is necessary and important in the avoidance of sexual

18 harassment, favoritism in hiring, supervision and delegation of

19 duties, as well as avoidance of misunderstandings, miscommunications

20 and conflicts of interest.  Ct. Rec. 32, at 4.

21    Based on the evidence, Defendant Hospital withheld permission from

22 Plaintiff to date Ms. Villarreal due to the fact that the Hospital had

23 already received prior complaints of favoritism from others in the

24 business office.  It cannot be said that the policy substantially

25 burdened Kinne's rights to association and privacy.  And Plaintiff

26 does not argue that the policy at issue should not be upheld or that

ORDER - 8

there is not a rational basis for its existence. The facts indicate that the Defendant Hospital withheld permission for Plaintiff to date Villerreal due to the fact the Hospital had received prior complaints of favoritism from others in the business office.  The Court finds that Plaintiff's constitutional rights were not deprived under the unique facts of this case.

### 2.  Qualified Immunity

Defendants state that whether an official, such as Defendant Geller in this case, may prevail on a qualified immunity defense depends upon the objective reasonableness of the conduct as measured by reference to clearly established law. Defendants argue that Geller's conduct in withholding permission from Kinne to date Villerreal was objectively reasonable under the facts if this case. Prior to Kinne requesting permission to date Villerreal, the Hospital had already received complaints of favoritism and disparate treatment from other employees who worked in the business office. Defendants conclude that Geller has qualified immunity which shields him from liability on the alleged claims.

Plaintiff argues that the right of intimate association has been apparent to state actors well before 1984 and has applied to dating relationships since 1984.  Plaintiff contends that Defendant Geller should have recognized that he would violate the right when allegedly retaliating against Kinne for his association and for the resignation of Villerreal.

The Court above found that Plaintiff's constitutional rights were not violated.  Therefore, it is unnecessary to analyze the qualified

ORDER - 9

1   immunity defense with respect to Defendant Geller.  The Court

2   dismisses the 42 U.S.C. §1983 cause of action against all Defendants.

3       **C.    Discharge in Violation of Public Policy**

4       Defendant argues that Kine cannot establish a prima facie case of

5   wrongful discharge in violation of public policy.  Defendants explain

6   that although Plaintiff attempts to couch his request to receive

7   permission to date a subordinate employee as opposition to sexual

8   harassment, his conduct (seeking permission to date) is not covered as

9   a matter of public policy.  Defendants further assert that the public

10  policy must be clear.  As part of the requirement that the public

11  policy mandate be clear. Washington courts also require that the

12  employee seek to further the public good, not merely private or

13  proprietary interests.  *Farnan v. Crista Ministries*, 116 Wn.2d 659,

14  669 (1991).   Further, Defendants explain citing *Thompson v. St. Regis*

15  *Paper Co.*, 102 Wn.2d 219, 226 (1984), an employer can discharge

16  employees for no cause, good cause or even cause morally wrong without

17  fear of liability.

18      In this case, Defendants assert that the only interest Plaintiff

19  was trying to protect was simply his own individual, private interest

20  and not those of the public in general.  Therefore, Defendants request

21  that Kinne's claim for wrongful discharge in violation of public

22  policy be dismissed.

23      Plaintiff, on the other hand, contends that a clear public policy

24  existed here, which is prohibiting sexual harassment in the state of

25  Washington. Plaintiff states he recognized the hospital's sexual

26  harassment policy in furthering this public policy.  Plaintiff

ORDER - 10

1  concludes his discharge jeopardizes this public policy.  The Court

2  disagrees for the reasons that follow.

3     A claim for wrongful discharge in violation of public policy is

4  established by showing (1) a clear public policy (clarity element);

5  (2) the public policy will be jeopardized by the discharge (jeopardy

6  element); (3) the plaintiff's protected action caused the discharge

7  (causation element); and (4) the defendant cannot show an overriding

8  justification for the dismissal. (absence of justification element).

9  *Hubbard v. Spokane County*, 146 Wn.2d 699, 707, 50 P.3d 602 (2002)

10 *citing Gardner v. Loomis Armored*, Inc. 128 Wn.2d 931 (1996).  The

11 parties agree on the elements that are required for this intentional

12 tort.  The parties, however, do not agree on application of the facts

13 to the elements.

14    A plaintiff must prove <u>all</u> four elements of the wrongful discharge

15 in violation of public policy.  The Court finds that there is no clear

16 mandate of public policy (clarity element) contravened under the facts

17 of the instant case.  Finding no clear mandate of public policy, the

18 Court need not discuss the jeopardy element of a prima facie case.

19 Additionally, Plaintiff cannot show there was not an overriding

20 justification for his dismissal, i.e., performance, complaints of

21 favoritism from others in the Hospital Business Office, non-

22 cooperativeness of Plaintiff in replacement of Villerreal, and lack of

23 trust in Plaintiff's abilities and judgment.  The Court dismisses this

24 cause of action against all Defendants.

25 / / /

26 / / /

ORDER - 11

1    **D.    Retaliatory Discharge in Violation of RCW 49.60.210**

2        As the parties agree, the employee must initially establish a *prima*

3    *facie* case of retaliation in order to satisfy a claim for retaliatory

4    discharge in violation of RCW 49.60.210.  *Milligan v. Thompson*, 110

5    Wn.App. 628, 638 (2002).  Defendants argue that Plaintiff has failed

6    to establish a prima facie case.  Even if Plaintiff could meet his

7    burden, Defendants state that they have produced admissible evidence

8    of a legitimate, non-discriminatory, non-retaliatory reason for the

9    discharge.

10       Plaintiff argues that he satisfies all three elements of a required

11   prima facie case and asserts that Defendant Hospital's reasons for

12   discharge are pre-textual.  In support of this argument, Plaintiff

13   states that the timing of his discharge provides evidence of a

14   retaliatory motive.

15       The Court finds that while Plaintiff believes he was a victim of

16   retaliation, Kinne does not set forth any evidence establishing a

17   prima facie case of retaliation.  Plaintiff merely speculates that the

18   timing of his discharge provides evidence establishing a prima facie

19   case.

20       In order to satisfy a claim for retaliatory discharge in violation

21   of RCW 49.60.210, the plaintiff must show that (1) he had engaged in a

22   protected activity, (2) that he suffered an adverse employment action

23   against him, and (3) that retaliation was a substantial factor behind

24   the adverse employment action.  *Kahn v. Salerno*, 90 Wn.App. 110, 129,

25   951 P.2d 321, rev. denied, 136 Wn.2d 1016 (1998).  Plaintiff

26

ORDER - 12

1  cannot show, without speculation, that retaliation was a substantial

2  factor, or a factor at all, behind his discharge.  Plaintiff has not

3  provided competent evidence of pretext to support his allegation that

4  he was terminated for asking permission to date a subordinate

5  employee.  Pretext cannot be established by conclusory statements of a

6  plaintiff who feels that he has been discriminated against. And, as

7  noted above, in the absence of evidence of pretext, Kinne was an "at

8  will' employee whose employment could be terminated with or without

9  cause.

10     Defendants, however, have produced evidence of performance issues

11  during Kinne's informal 6-month probationary period.  Ct. Rec. 32, at

12  9-10. With evidence that the Hospital had legitimate,

13  nondiscriminatory and non-retaliatory reasons to terminate Kinne's at-

14  will employment, Plaintiff cannot satisfy the element that alleged

15  retaliation was a substantial factor behind his discharge.  For these

16  reasons, the Court dismisses this claim against all Defendants.

17     **E.    Breach of Promise**

18     Plaintiff asserts that the Hospital breached a promise of specific

19  treatment in specific circumstances, contained in the Hospital's

20  Employee Handbook.  Plaintiff states that the primary policy he relied

21  upon was that portion of the Hospital's harassment policy concerning

22  no retaliation against anyone or makes a good-faith complaint or who

23  cooperates in good faith investigation.  Ct. Rec. 24, at 24.

24  Plaintiff, in his responsive memoranda, argues there is an issue of

25  fact as to whether the Hospital's disclaimer is applicable to the

26  equal employment policies contained in the Handbook.

ORDER - 13

1  Defendants argue that Plaintiff did not have a right to rely on any

2  promises of specific treatment based on the disclaimer on page 1 of

3  the Handbook.  In addition to being on the first page, conspicuous and

4  in bold font, the Hospital's policy included the statement that

5  "**Because of this, our policies are simply guidelines, not promises of**

6  **specific treatment in specific situations**."

7  The Court has reviewed the parties' arguments.  The interpretation

8  of a writing is a question of law for the Court.  Based upon the

9  Hospital's Introduction Policy in its Employee Handbook, the Court

10  finds that Plaintiff could not have had any reasonable expectation

11  that the Hospital's Handbook made any promises of specific treatment

12  in specific situations or to justifiably rely on any other provisions

13  in the Handbook.  The policy states, in pertinent part:

14          This handbook contains general statements of Adams
           County Public Hospital District No. 3, operating as
15          Othello community Hospital ("OCH"), policy for your
           information . . . As we are sure you understand, we
16          must be able to respond flexibly to changing
           circumstances as they arise.  **Because of this, our**
17          **policies are simply guidelines, not promises of**
           **specific treatment in specific situations**.  Our
18          policies and practices, including the compensation
           and benefits we provide, are subject to change in
19          content and application without prior notice, at our
           discretion.  All decisions regarding the application
20          or interpretation of our policies and practices are
           also in our discretion.  This applies to all of our
21          policies and practices, whether formal or informal,
           and whether or not contained in this handbook.
22          Nothing in this handbook is intended to be a contract
           limiting OCH's discretion to act as it deems
23          appropriate in any given situation.

24  Ct. Rec. 24, at 27, Exh. 3.

25  The Court further finds that, as a matter of law, the Handbook does

26  not provide a promise of specific treatment in specific circumstances

ORDER - 14

1  when the Handbook gives the employer discretion in applying the

2  policies.  *Sharpe v. AT&T Co.*, 66 F.3d 1045 (9th Cir.1995).  Based on

3  the foregoing, Plaintiff's claim of breach of promise is dismissed

4  against all Defendants.

5  **III.    CONCLUSION**

6     Based upon the reasons and authorities cited above, **IT IS HEREBY**

7  **ORDERED:**

8     1.    Defendants' Motion for Summary Judgment (Ct. Rec. 22) is

9  **GRANTED.**

10    2.    The District Court Executive is directed to enter this Order

11 and shall forward copies to counsel.  The Clerk shall enter judgment

12 consistent with this order and close the file.

13    DATED this 4th day of February, 2010.

14

15                         *s/Lonny R. Suko*
                    _____
16                         LONNY R. SUKO
                    Chief United States District Judge

17

18

19

20

21

22

23

24

25

26

ORDER - 15